The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GENE R. MONPER, BRETT A. LYNCH, and MARK C. VETURIS,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE BOEING COMPANY *et al.*,<br><br>    Defendants. | Case No. 2:13-cv-01569-RSM<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR:<br>January 1, 2016 |

Pursuant to Federal Rule of Civil Procedure 56, Defendants move for summary judgment on all of the remaining claims in this action. Undisputed facts establish that, by 2009 at the latest, Plaintiffs had "actual knowledge" of the breaches of fiduciary duty that they allege in this action. But they did not file suit until more than four years later. As a matter of law, their claims are therefore time-barred under the governing three-year statute of limitations found in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1113(2). The legal and factual grounds for this motion are set forth in more detail below.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

**INTRODUCTION**

In this case, three employees of The Boeing Company ("Boeing") allege that they were orally misinformed about how their pension benefits would be affected if they transferred jobs within the Boeing corporate family. In particular, Plaintiffs allege that they were told in late 2007 that, upon transfer from Long Beach, California to the Seattle area, they would continue to earn "Aggregate Benefit Service" under their prior pension plan. Those representations, they say, were critical to their decisions to transfer: They wanted to retire early, and the prior pension plan offered a generous, unreduced early-retirement option, but they had not yet attained the 30 years of Aggregate Benefit Service necessary to qualify for that generous benefit at the time of their transfer. As it turns out, however, the prior pension plan's terms are clear that Plaintiffs' service post-transfer *would not* count as Aggregate Benefit Service under such plan. Am. Compl., Dkt. 25 ("Compl."), ¶ 2. Having no claim under the terms of the prior pension plan, Plaintiffs instead sue for alleged breach of fiduciary duty under ERISA.

Defendants have found no evidence of these misrepresentations. Although Xerox Corporation, the third-party vendor that operates the Boeing Retirement Service Center, keeps careful records, its files on Plaintiffs Monper and Lynch make no mention of any calls from either of them in 2007. And the individuals who allegedly misinformed Plaintiffs in face-to-face encounters either squarely deny such conversations or have not been identified despite a diligent search. In addition, notwithstanding Plaintiffs' allegations that, absent the representations, they would have stayed in their old jobs at Boeing's C-17 aircraft facility in Long Beach and attained the requisite 30 years of Aggregate Benefit Service, it was well-known at the time of their transfer that the C-17 program employing all three Plaintiffs was scheduled to be closed and layoffs were imminent. Indeed, even though the C-17 program stayed open longer than anticipated, it has since been shut down entirely, and Plaintiffs are *still* ineligible for early retirement. There are thus serious grounds to doubt not only that any misrepresentations in fact occurred, but also that Plaintiffs detrimentally relied on them or that any damage resulted.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

There is no need, however, for this Court to referee a he-said-she-said dispute involving phone calls and face-to-face conversations that allegedly took place *more than 8 years ago*, or to wade into counterfactual speculation over what would have happened had Plaintiffs turned down their job transfers in early 2008. *Regardless, Plaintiffs filed their claims too late*.

Specifically, Plaintiffs waited more than three years after obtaining "actual knowledge" of the alleged breaches of fiduciary duty. 29 U.S.C. § 1113(2). As this Court explained in its ruling on Defendants' motion to dismiss, any fiduciary liability here rests on an "omissions-based theory": Because Plaintiffs had allegedly not been told which pension plan they would join upon their transfer, they had no way to know that service under that new plan would not count as "Aggregate Benefit Service," and so were susceptible to oral misinformation provided by non-fiduciaries on that point. *See* Order, Dkt. 53, at 16-18. That ambiguity, and Defendants' alleged failure to clarify it by identifying the new plan, form the crux of Plaintiffs' theory of liability.

The undisputed facts, however, establish that all three Plaintiffs *requested and received detailed, written pension estimates within 15 months of their transfers*—and more than four years before suing. The estimates clearly identified the new pension plan they had joined following their transfers, which Plaintiffs admit is sufficient information to resolve any doubt over whether their post-transfer service would count under the old plan. The estimates further specified how many years of Aggregate Benefit Service each had attained under the old plan—and that number did not increase *at all* post-transfer. Moreover, projected early retirement benefits, *reflecting reduced sums*, were annually made available to Plaintiffs online, including within months of their transfers. In short, if Plaintiffs had been orally lied to, they obtained "actual knowledge" as a matter of law by 2009, when written materials contradicted the earlier alleged representations.

## FACTUAL BACKGROUND

The few facts material to this motion are set forth with precision below, *see infra* p. 8; in this section, Defendants provide general factual background for context.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

### A. The Planned Closure of the C-17 Facility in Long Beach.

In 2007, all three Plaintiffs worked on the C-17 program in Long Beach. Compl. ¶¶ 229, 276; Wilkins Decl. (Exh. 1), ¶ 2. The C-17 aircraft is a military transport plane developed by the McDonnell Douglas Corporation and assembled in Long Beach since 1988. Martin Zimmerman & Ronald D. White, *Boeing Moves to Close Plant*, L.A. TIMES, Aug. 19, 2006, at A1.

In August 2006, Boeing announced that the C-17 program would be shut down "by the middle of 2009" absent "substantial new orders," and instructed its suppliers "to stop producing parts." *Id.* At that time, there were "not enough [orders] to sustain continued production beyond mid-2009." Boeing News Release, *Boeing Tells C-17 Suppliers Line May End in 2009,* Aug. 18, 2006, http://boeing.mediaroom.com/2006-08-18-Boeing-Tells-C-17-Suppliers-Line-May-End-in-2009. The closure was expected to affect approximately 5,500 Boeing jobs. *See id.*

Following the 2006 announcement, the C-17 program got a "reprieve" when Congress allocated funds for the Air Force to purchase 10 additional planes—but the next year, in March 2007, Boeing reannounced and resumed its plans to shut down the production line by mid-2009. *See* Peter Pae, *C-17 Line Is Again Facing Closure*, L.A. TIMES, Mar. 3, 2007, at C2; *see also* Boeing News Release, *Boeing Announces C-17 Line May End in Mid-2009; Stops Procurement of Long-lead Parts*, Mar. 2, 2007, http://boeing.mediaroom.com/2007-03-02-Boeing-Announces-C-17-Line-May-End-in-mid-2009-Stops-Procurement-of-Long-lead-Parts.

In June 2007, the company delayed the closure by six months in the hopes of obtaining additional orders. But the C-17 facility was still expected to close by 2010. *See* Peter Pae & Martin Zimmerman, *Boeing Extends Life of C-17 Line*, L.A. TIMES, June 20, 2007, at C1.

Ultimately, while thousands of employees were laid off since then, including roughly 900 in 2011, the final closure of the C-17 program was delayed until 2015; the Long Beach facility was shut down in recent weeks. Wilkins Decl. (Exh. 1), ¶¶ 3-4; *see also* W.J. Hennigan, *Boeing To Lay Off 900 at C-17 Plant*, L.A. TIMES, Jan. 20, 2011, at B1. Yet none of Plaintiffs has yet turned 55, their earliest possible retirement age. Compl. ¶¶ 242, 289, 318.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**B.     The Alleged Misrepresentations to Plaintiffs.**

In the immediate aftermath of the 2007 closure announcements, Plaintiffs interviewed for internal job transfers within the Boeing corporate family.  Compl. ¶¶ 233, 280, 311.  Unlike the C-17 program in Long Beach, the 787 Dreamliner program in the Seattle area "anticipated work … to last a minimum of 8 to 10 years."  *Id.* ¶ 233.  All three Plaintiffs were offered job transfers to that program.  Compl. ¶¶ 239, 284, 311.

Prior to their transfers, Plaintiffs were members of Local 148 of the United Automobile Workers and participated in a pension plan known as the "Hourly West Plan."  *Id.* ¶¶ 31, 34.  The Hourly West Plan includes an early retirement option under which vested participants with at least 30 years of "Aggregate Benefit Service" may retire at age 55 with full benefits as well as an early retirement supplement.  *Id.* ¶¶ 34, 37, 41.  The Summary Plan Description ("SPD") for the Hourly West Plan defines "Aggregate Benefit Service" as including years of benefit service under the Hourly West Plan as well as years of benefit service earned under certain specified other pension plans sponsored by Boeing and its affiliates.  *Id.* ¶ 36.

Plaintiffs allege that, in the course of their recruitment and follow-up inquiries in 2007, they were advised that their early retirement benefits would not be affected by their transfers and that they would continue to accrue Aggregate Benefit Service under the Hourly West Plan.  In particular, Plaintiffs Monper and Lynch allege they were told, during in-person encounters at job fairs in the fall of 2007, that their early retirement benefits would not change.  *Id.* ¶¶ 236, 282.  Plaintiffs Monper and Lynch also allege that they made follow-up phone calls to Boeing's benefits line shortly thereafter, and were advised that they would earn Aggregate Benefit Service under the Hourly West Plan after the transfer.  *Id.* ¶¶ 238, 284.  Plaintiff Lynch alleges a further in-person discussion with a human resources employee, confirming that representation.  *Id.* ¶ 285.  Finally, Plaintiff Veturis alleges that he spoke with an unspecified Benefits Specialist in Long Beach, also in November 2007, and that this employee pointed Veturis to the Hourly West

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1  Plan's SPD and advised that he would be joining the "Pension Value Plan" after his transfer; the
2  SPD identifies that Plan as one that counts toward "Aggregate Benefit Service." *Id.* ¶ 313.

3  While recognizing that discovery is still underway, Boeing has been unable to confirm
4  that *any* of these alleged misrepresentations occurred. Xerox, the vendor that operates the Boeing
5  Retirement Service Center and answers pension inquiries, retains files on Plaintiffs Monper or
6  Lynch, but they do not mention any pension calls in 2007—though they do mention an *unrelated*
7  inquiry from Lynch in 2007 and even *earlier* interactions with Plaintiff Veturis. Kruesi Decl.
8  (Exh. 2), ¶ 3. Moreover, the employees with whom Monper and Lynch allegedly had in-person
9  conversations deny making *any* representations about pension benefits, a topic none of them is
10 very familiar with; and the Benefits Specialist who Plaintiff Veturis allegedly spoke to has not
11 been identified, despite a diligent search. Answer, Dkt. 67, ¶¶ 236, 282, 313-315.

12  **C.  Plaintiffs' Post-Transfer Receipt of Pension Information.**

13  Had Plaintiffs known they would be joining the Boeing Company Employee Retirement
14 Plan ("BCERP") following their transfers, it would have been perfectly clear that they would *not*
15 accrue further Aggregate Benefit Service—because the Hourly West SPD does not list BCERP
16 as a plan for which service counts toward Aggregate Benefit Service. Compl. ¶ 36. At the time
17 they transferred, however, Plaintiffs allege that they did not know which new pension plan they
18 would be joining. Accordingly, they could have believed that they would join a plan for which
19 benefit service *does* count—like the Pension Value Plan. *Id.* Indeed, Plaintiff Veturis alleges
20 that he was expressly advised that he would be joining the Pension Value Plan. *Id.* ¶ 313.

21  This Court relied on that "omission" in refusing to dismiss the Complaint. Order, Dkt.
22 53, at 16-18. The Court explained that Defendants may be liable for failing "to provide Plaintiffs
23 with complete and accurate information" by "specifying to which Plan they would belong upon
24 transferring." *Id.* at 15, 18. "Plaintiffs do not dispute that had they known they would be moved
25 into the BCERP upon transfer, they could have verified with reference to the terms of the Plan
26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

documents that they could not have continued to accrue time toward unreduced early retirement benefits under the Hourly West Plan." *Id.* at 17-18. But they allege that they did not know.

Plaintiffs did, however, learn about how their transfers affected their pension benefits not long *after* transferring. Via Boeing's employee web portal, employees may request estimates of projected pension benefits. Kruesi Decl. (Exh. 2), ¶ 4. And Plaintiffs in fact each requested and received at least one such estimate between December 2008 and January 2010; Plaintiff Veturis obtained two, and Plaintiff Lynch three. *Id.* ¶¶ 8, 12, 17. (Between December 2008 and the present, Veturis has obtained at least 41 estimates, Lynch 22, and Monper 10. *Id.* ¶¶ 7, 11, 16.)

These pension estimates were detailed, specific, and included separate sections describing benefits under the two separate plans under which Plaintiffs earned credit. They made perfectly clear that all three Plaintiffs had joined BCERP upon their transfers. *Id.* ¶¶ 9, 13, 18. Further, the estimates listed how many years of Aggregate Benefit Service each Plaintiff had accrued under the Hourly West Plan—and that number *stayed fixed* after their transfers. For example, Plaintiff Monper's estimate showed only 22.5 years of Aggregate Benefit Service under Hourly West as of January 2009, even though he had been working continuously for longer. *Id.* ¶ 18. Plaintiffs Veturis and Lynch received multiple estimates months apart, yet each showed the *same*, fixed amount of Aggregate Benefit Service under the Hourly West Plan, reflecting no increase at all since their transfers in early 2008. *Id.* ¶¶ 9-10, 13-15.

In addition, until 2013, all Boeing employees were provided with an electronic "Pay & Benefits profile," accessible online, that was updated annually and reflected, among other things, the employee's (i) accrued pension benefits for each pension plan in which they participate and (ii) *projected* pension benefits, assuming retirement at ages 55, 60, 62, and 65, for each such plan. Youngblood Decl. (Exh. 3), ¶¶ 2-4. Thus, in May 2008 and again in June 2009, Plaintiffs were provided with ready and publicized access to their projected early retirement benefits, which clearly showed that their Hourly West benefits would be substantially reduced if they retired early, at age 55, rather than age 65. *See id.* ¶¶ 15-17.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**STATEMENT OF MATERIAL FACTS**

1. Plaintiff Monper requested and received an estimate of his pension benefits on or about January 7, 2009. Kruesi Decl. (Exh. 2), ¶ 18.

2. The estimate Plaintiff Monper requested and received on or about January 7, 2009, stated that he was a participant in BCERP and had accrued 22.5034 years of Aggregate Benefit Service under the Hourly West Plan. *Id.*

3. Plaintiff Lynch requested and received estimates of his pension benefits on or about May 1, 2009, October 9, 2009, and January 17, 2010. *Id.* ¶¶ 13-15.

4. The estimates Plaintiff Lynch requested and received on or about May 1, 2009, October 9, 2009, and January 17, 2010, all stated that he was a participant in BCERP and had accrued 21.6801 years of Aggregate Benefit Service under the Hourly West Plan. *Id.*

5. Plaintiff Veturis requested and received estimates of his pension benefits on or about December 10, 2008, and May 13, 2009. *Id.* ¶¶ 9-10.

6. The estimates that Plaintiff Veturis requested and received on or about December 10, 2008, and May 13, 2009, stated that he was a participant in BCERP and had accrued 27.8400 years of Aggregate Benefit Service under the Hourly West Plan. *Id.*

7. As of May 2008 and again as of June 2009, Plaintiffs Monper, Veturis, and Lynch had access online to "Pay & Benefits profiles" that accurately projected future pension benefits under the Hourly West Plan assuming retirement ages of 55, 60, 62, and 65, reflecting substantial reductions to those benefits if they retired before the normal retirement age of 65. Youngblood Decl. (Exh. 3), ¶¶ 12-13.

8. Plaintiffs filed their lawsuit in this Court, asserting claims of breach of fiduciary duty under ERISA, on August 30, 2013. *See* Compl., Dkt. 1.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

## SUMMARY OF ARGUMENT

There is no need for this Court to wade into a stale he-said-she-said dispute over who promised what to whom back in the fall of 2007, or to delve into counterfactual speculation about what Plaintiffs would have done had they understood that, while transferring to the Seattle area would guarantee them a decade of steady work, it would also preclude them from qualifying for the generous, unreduced age-55 early-retirement package that would be available if they were able to avoid layoffs in Long Beach for at least a decade. In all events, the threshold legal defect in Plaintiffs' lawsuit is that they filed it far too late. Their claims are time-barred.

Under ERISA, claims for breach of fiduciary duty must be filed no later than three years after the plaintiff gains "actual knowledge" of the relevant facts. 29 U.S.C. § 1113; *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985). In misrepresentation cases like this one, that means the three-year limitations period begins to run when the plaintiff learns of facts that contradict the earlier representations. Caselaw makes clear that, faced with such contradiction, the plaintiff has actual knowledge of facts sufficient to support a fiduciary breach claim.

Here, Plaintiffs allege that they were initially advised that they would continue to earn Aggregate Benefit Service under the Hourly West Plan even after transferring to Seattle—advice they were compelled to accept because they allegedly were not told they would join BCERP post-transfer. But even if all of that were true, Plaintiffs would have gained "actual knowledge" of the breach as soon as they learned either (i) the identity of their new plan, BCERP, which did *not* count toward Aggregate Benefit Service; or (ii) that they were accordingly *not* continuing to accrue such Aggregate Benefit Service; or (iii) that their Hourly West benefits upon an age-55 retirement would be *reduced*. Yet Plaintiffs learned *all three of these facts* by 2009 at latest.

Specifically, each Plaintiff requested and received at least one detailed, written estimate of his pension benefits within months of transferring to Seattle. Those estimates plainly showed that Plaintiffs were participating in BCERP—*not* the Pension Value Plan, which Plaintiff Veturis alleges he had been told he would be joining—and, consequently, that their Aggregate Benefit

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Service under the Hourly West Plan *had not increased a whit* since they left Long Beach. On top of that, Plaintiffs were provided annually with electronic benefit profiles, posted online, that projected their retirement benefits under each plan at various retirement ages, including 55. Consistent with the pension estimates, those profiles correctly projected that Plaintiffs would receive only *reduced* benefits under the Hourly West Plan should they retire at age 55. These written materials clearly triggered the limitations period for ERISA claims alleging earlier oral misrepresentations. But Plaintiffs did not file within the requisite three years.

Importantly, it does not matter whether Plaintiffs now assert they did not clearly review or appreciate the significance of these estimates and projections. Courts around the country have uniformly held that what counts, for "actual knowledge" purposes under ERISA, is whether the relevant facts were *provided or made available* to the plaintiff, not whether the plaintiff understood (or even read) the materials. *See, e.g.*, *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010). Otherwise, plaintiffs could evade the statute of limitations, and defeat the important purposes served by such time limits, simply by feigning ignorance. The courts have thus dismissed, at the summary judgment stage, numerous fiduciary breach claims based on facts disclosed in SPDs, benefit statements, and other written plan materials—including on facts nearly identical to those in this case. *See Adams v. The Brink's Co.*, 420 F. Supp. 2d 523, 554-55 (W.D. Va. 2006). The same result is compelled here.

## ARGUMENT

**I.   PLAINTIFFS' CLAIMS ARE TIME-BARRED, BECAUSE THEY HAD ACTUAL KNOWLEDGE OF ALL MATERIAL FACTS MORE THAN THREE YEARS BEFORE THEY FILED THIS ACTION.**

Defendants' argument is simple. The alleged fiduciary breach here, as explained by this Court in its order on the motion to dismiss, was the failure to ensure that Plaintiffs were given accurate and complete information about what pension plan they would be joining if they accepted their job transfers. Because of that alleged failure, Plaintiffs could have believed that they were joining a pension plan—like the Pension Value Plan—that provides Aggregate Benefit

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1  Service for purposes of the Hourly West Plan. However, by 2009 at the latest, Plaintiffs were all
2  clearly told that they had joined BCERP, not the Pension Value Plan. And the pension estimates
3  that they requested and received also revealed that they were *not* earning any Aggregate Benefit
4  Service following their transfers. Their online Pay & Benefits profiles demonstrated the same,
5  by reflecting projected early-retirement benefits at reduced levels. For those reasons, Plaintiffs
6  had "actual knowledge" of the alleged breach, as a matter of law, by mid-2009. Because they
7  did not file within three years, their claims are barred under the applicable statute of limitations.

       **A.  ERISA Fiduciary-Breach Claims Must Be Filed Within Three Years After a Plaintiff Is Provided with Documents Reflecting the Material Facts.**

Under ERISA, "[n]o action may be commenced ... with respect to a fiduciary's breach of any responsibility, duty, or obligation, … after the earlier of" either (i) six years after the act or omission constituting the breach, or (ii) three years "after the earliest date on which the plaintiff had actual knowledge of the breach." 29 U.S.C. § 1113; *see also Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988).

What it means to have "actual knowledge" of a breach depends on the particular type of breach alleged. *Meagher*, 856 F.2d at 1422. In misrepresentation cases, a participant obtains "actual knowledge" upon learning the *true* facts. *See Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996). The inquiry is ultimately "factual, requiring examination of the record," *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 552 (9th Cir. 1990), but there are two legal propositions concerning the parameters of "actual knowledge" that bear mention here.

*First*, Ninth Circuit law is clear that the plaintiff need not understand *the law* in order to trigger the statute. To the contrary, "[t]he statute of limitations is triggered by the defendants' knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." *Blanton*, 760 F.2d at 992. That is, the plaintiff must have actual knowledge of the *material facts*, but need not understand ERISA. *See Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 660 (4th Cir. 2009) (recognizing that Ninth Circuit requires "only that the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

plaintiff have knowledge of the facts … it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim").

*Second*, "a person … who receives a document is presumed to have knowledge of its contents." *Dublin Eye Assocs., P.C. v. Mass. Mut. Life Ins. Co.*, 590 F. App'x 463, 466 (6th Cir. 2014). "Actual knowledge does not 'require proof that the individual Plaintiffs actually saw or read the documents that disclosed'" the material facts. *Brown*, 622 F.3d at 571. Rather, so long as the plaintiffs received documents or "were provided with access" to them, "their failure to read the documents will not shield them from having actual knowledge of the documents' terms." *Id.*

Accordingly, numerous courts have applied the three-year limitations period where facts revealing the alleged breach were reflected in documents provided or otherwise made available to the plaintiffs—whether that was SPDs, prospectuses, benefit statements, or the like. *See, e.g.*, *id.*; *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) (asking "whether the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether individual Plaintiffs actually saw or read the documents"); *Enneking v. Schmidt Builders Suply Inc.*, 875 F. Supp. 2d 1274, 1284 (D. Kan. 2012) ("Actual knowledge does not require proof that the Plaintiffs actually read (let alone understood) the documents."); *Krueger v. Ameriprise Fin'l, Inc.*, 2014 WL 1117018, at *6 (D. Minn. Mar. 20, 2014) (finding limitations period triggered "when a plan participant is provided with plan documents or given instructions on how to access them"); *Shirk v. Fifth Third Bancorp*, 2009 WL 3150303, at *3 (S.D. Ohio Sept. 30, 2009) ("Plaintiffs' actual knowledge runs from the date that documents were provided, or made available, to Plan Participants disclosing the facts underlying the alleged breach …."). Any rule "that would allow a participant to refuse to accept and acknowledge information clearly set before him is untenable." *Reeves v. Airlite Plastics, Co.*, No. 8:04CV56, 2005 WL 2347242 (D. Neb. Sept. 26, 2005).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

**B.     Pension Estimates and Online Projections Revealed, By 2009 At Latest, the Facts That Allegedly Had Been Withheld or Misrepresented.**

In this case, Plaintiffs requested and received pension estimates that revealed the material facts underlying their claims—specifically, (i) that they joined BCERP on their transfer to the Seattle area, not any other plan that would have allowed them to earn Aggregate Benefit Service under the Hourly West Plan; and (ii) confirming the same point, that they were not accruing any further Aggregate Benefit Service following their transfers. Moreover, the fact that their early-retirement benefits under the Hourly West Plan would be reduced if they retired at age 55 was obvious on the face of their online benefit profiles. Yet Plaintiffs did not file suit within three years of receiving those estimates or being given access to those online profiles.

*1.     Plaintiff Monper.*

Plaintiff Monper requested and received a pension estimate on January 7, 2009, about one year after transferring from Long Beach. *See* Kruesi Decl. (Exh. 2), ¶ 18. The estimate included a page outlining "Estimated Benefit Payment Options" under "The Boeing Company Employee Retirement Plan," *i.e.*, BCERP, and an additional three pages of "Calculation Detail" under BCERP. *See id.*, Exh. 2.L. The calculation detail reflected that he had accrued 1.045 years of credited service in BCERP, corresponding to the time since his transfer. *See id.*

The pension estimate also included analogous pages addressing benefits and calculation details under the "Hourly West Plan." *See id.* The calculation detail, which set forth vesting status, benefit credit, etc., also included a line item for "Aggregate Benefit Service" and reported it to be 22.5034 years—less than Monper's total number of years of work for Boeing and no higher than it had been when he left his Long Beach position. *See id.*

Moreover, employees' online benefit profiles were updated in May 2008 and the updates were widely publicized at that time. *See* Youngblood Decl. (Exh. 3), ¶¶ 5-7. Plaintiff Monper's profile showed that he had joined BCERP (and accrued a $14 monthly benefit during the months since his transfer). *Id.* ¶¶ 11, 15. It also projected that while Monper would earn a $1563

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
Case No. 2:13-cv-01569-RSM

monthly benefit from the Hourly West Plan if he retired at age 65, that benefit would be only $907 per month if he retired at 55, and only $1376 if he stayed until 60. *See id.* ¶¶ 12, 15. (The 2009 profile, updated in June 2009, reflected those same projected reductions. *Id.* ¶¶ 13, 15.)

Plaintiff Monper therefore knew, as of January 7, 2009 (the date of his pension estimate and subsequent to his 2008 benefit profile update), that (i) he had been transferred to BCERP; (ii) he had *not* been accruing Aggregate Benefit Service under the Hourly West Plan following his transfer; and (iii) if he retired early, his Hourly West benefits would be subject to substantial reductions. Those facts amount to "actual knowledge" of the fiduciary breach claim here, which alleges an omission as to the first and oral misrepresentation as to the second and third. Yet Monper did not file suit until more than four and a half years later, on August 30, 2013.[1]

### 2. *Plaintiff Lynch.*

Plaintiff Lynch received three pension estimates within two years of his transfer: on May 1, 2009, October 9, 2009, and January 17, 2010. Kruesi Decl. (Exh. 2), ¶¶ 13-15. Again, each estimate clearly identified BCERP as the only other plan, apart from Hourly West, in which Lynch was participating. *Id.* And each estimate listed his "Aggregate Benefit Service" under Hourly West as "21.6801." *See id.* That was the figure as of May 1, 2009; it had not increased at all as of October 9, 2009, or January 7, 2010. *See id.* By contrast, his service under BCERP increased from 1.4275 to 1.945 to 2.09 over that same period. *See id.*, Exhs. 2.F, 2.H, 2.J.

Moreover, Plaintiff Lynch's online benefit profile, which was updated in May 2008, also showed that he had joined BCERP. *See* Youngblood Decl. (Exh. 3), ¶¶ 11, 17. And, as with Monper, it projected that his $1512 monthly Hourly West benefit would decline to $876 if he retired at age 55 or to $1330 if he retired at age 60. *See id.* ¶¶ 12-13, 17.

---

[1] In the interim, Plaintiff Monper filed an internal benefits claim on May 13, 2011, and that administrative process lasted until the denial of his appeal on May 3, 2012. Compl. ¶¶ 256, 264. But even if the statute were tolled during that year—and it is not, because there is no requirement to exhaust claims for breach of fiduciary duty, *see Graphic Commc'ns Union v. GCIU-Employer Ret. Benefit Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990)—the complaint was still filed more than seven months too late.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Thus, as to Plaintiff Lynch, it is *even clearer* that he gained "actual knowledge" not only that he had joined BCERP following his transfer and that he was facing benefit reductions if he retired early, but also that he was no longer earning Aggregate Benefit Service. Even if the latter fact did not jump off the page of the *first* estimate, it was readily apparent from Lynch's *second* and *third* estimates in October 2009 and January 2010. His Aggregate Benefit Service figure did not increase *at all* over that time, manifestly reflecting that no such service was being continually earned. Had Lynch earlier been orally misinformed, he therefore gained "actual knowledge" by January 2010 at latest. Yet he did not file suit until August 30, 2013, nearly four years later.[2]

### 3. *Plaintiff Veturis.*

Plaintiff Veturis requested and received two pension estimates within 16 months of his transfer: on December 10, 2008, and May 13, 2009. Kruesi Decl. (Exh. 2), ¶¶ 9-10. Again, each clearly identified BCERP as the plan he had joined upon his transfer to the Seattle area. *See id.* Moreover, like the other estimates, the two obtained by Veturis listed his "Aggregate Benefit Service" under Hourly West—the number was "27.84," on *both* dates; it did not increase at all between December 2008 and May 2009, reflecting that no further accruals were being earned. Other figures on the two estimates, by contrast, showed growth over this period; his credited service under BCERP, for example, increased from 1.00 to 1.45. *See id.*, Exhs. 2.B, 2.D.

In addition, the online benefit profile for Plaintiff Veturis showed, as of May 2008, that (i) he had recently begun participation in BCERP, and (ii) his Hourly West benefits would be $1936 per month upon normal retirement but only $1123 per month upon age-55 early retirement or $1704 upon age-60 early retirement. *See* Youngblood Decl. (Exh. 3), ¶¶ 11-12, 16.

Plaintiff Veturis's "actual knowledge" is especially indisputable. *First*, he alleges he had been specifically told that he would join the Pension Value Plan following his transfer and thus, under the Hourly West SPD, continue to earn Aggregate Benefit Service. Compl. ¶ 313. Yet the

---

[2] Unlike Plaintiffs Monper and Veturis, Lynch did not file an internal administrative claim for benefits, so the issue of tolling during pendency of such a claim does not even arise.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

estimates and online profiles clearly demonstrated otherwise—that he had joined BCERP (which is not listed in the Hourly West SPD), *not* the Pension Value Plan.  They thereby conferred actual knowledge of any earlier misrepresentation.  *Second*, Veturis admits that his receipt of a *subsequent* pension estimate—in November 2010—revealed that he had not joined the Pension Value Plan and was not earning further Aggregate Benefit Service, contrary to the alleged 2007 representations.  *Id.* ¶ 328.  But the earlier estimates showed *the same*.  Given that admission, Veturis cannot deny that the earlier estimates provided actual knowledge.  *See Brown*, 622 F.3d at 571 (finding actual knowledge based on earlier access to SPDs, because plaintiffs conceded that they gained actual knowledge from subsequent provision of same SPDs).[3]

\*       \*       \*

As to all of Plaintiffs, the pension estimates they requested and that Boeing provided included the material facts underlying their claims—specifically, (i) that they joined BCERP, not the Pension Value Plan or any other plan affording Aggregate Benefit Service for purposes of the Hourly West Plan; and (ii) that, accordingly, they were not continuing to earn Aggregate Benefit Service under the Hourly West Plan subsequent to their transfers.  On top of that, each Plaintiff had access no later than May 2008 to online benefit profiles reflecting their participation in BCERP and their projected *reduced* Hourly West benefits if they retired early.  Those facts amount to "actual knowledge," as a matter of law, of the fiduciary breach they allege in this case. Once Plaintiffs gained actual knowledge of those facts, they therefore were required to bring suit within three years.  Because they failed to do so, their claims are time-barred under ERISA.

Nor can Plaintiffs object that they did not review the estimates and profiles carefully, or did not understand them.  Courts have uniformly rejected such arguments and barred analogous

---

[3] As with Monper, there is no legal basis to toll the statute of limitations during the pendency of Veturis's inapt internal benefits claim.  *See supra* n.1.  But even if one subtracts the roughly 16 months during which Veturis pursued that claim (from January 5, 2011 through April 27, 2011, and from June 24, 2011 through June 20, 2012), *see* Compl. ¶¶ 329-336, his complaint was still filed more than three years after receipt of his December 2008 pension estimate and publication of his May 2008 benefits profile.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   claims. In *Brown*, for example, the Sixth Circuit dismissed claims as time-barred because the
2   plaintiffs were "provided with access to the SPDs" and were also sent "quarterly account
3   statements," which together disclosed the "relevant facts" for their claims of fiduciary breach;
4   "their failure to read the documents" did not matter. 622 F.3d at 570-72. Similarly, *Young*
5   dismissed a fiduciary-breach claim where the relevant facts were found in "Plan documents
6   provided to participants more than three years ago"; the Southern District of New York did not
7   care "whether individual Plaintiffs actually saw or read the documents." 550 F. Supp. 2d at 419
8   & n.3. Using the same reasoning, *Shirk* dismissed a claim where facts reflecting the breach were
9   disclosed in "publicly filed prospectuses" that were "provided or made available" to participants.
10  2009 WL 3150303, at *6. Plaintiffs could "not avoid commencement of the statute of limitations
11  merely by refusing to read or examine information," and so the "actual knowledge" limitations
12  period began to run on "the date that documents were provided, or made available." *Id.* at *3.
13  And, in *Reeves*, the court dismissed a claim where it was evident from account statements sent to
14  the plaintiff that his retirement account had diminished in value and therefore had not been
15  invested in a money-market fund; the plaintiff had not paid attention, but the court refused to
16  allow him to "disavow knowledge" clear from the face of the documents. 2005 WL 2347242, at
17  *5; *see also Enneking*, 875 F. Supp. 2d at 1284; *Krueger*, 2014 WL 1117018, at *6.

18  One case in particular, *Adams v. The Brink's Co.*, 420 F. Supp. 2d 523 (W.D. Va. 2006),
19  is strikingly similar to this one. The plaintiffs in *Adams* alleged that they were told, prior to an
20  acquisition of their employer, that they would retain their service credit after the transaction. As
21  it turns out, that was false—they retained *vesting* credit but not *benefit* credit—and the plaintiffs
22  sued for breach of fiduciary duty. *See id.* at 526-29, 550. The plaintiffs, however, received
23  letters following the acquisition, which indicated that their pensions "consisted of two parts" and
24  included "a sample pension benefits calculation" for a hypothetical employee. *Id.* at 554. That
25  calculation "did not include the employee's time [pre-acquisition] in the calculation of benefits
26  under the [new plan]." *Id.* at 554-55. The court ruled that, based on receipt of those letters and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

calculations, the plaintiffs had "actual knowledge" of the breach more than three years prior to filing their complaint. *Id.* "For any [plaintiff] who claims he received misrepresentations before these communications, these communications should have put him on notice that there had been previous misrepresentations." *Id.* As such, the claims were "barred by the statute of limitations in that they were not filed within three years of this notice." *Id.*

As in *Adams*, Plaintiffs here allege oral miscommunications regarding impacts to their service credit. As in *Adams*, however, Plaintiffs received written profiles and calculations that reflected no further accrual of Aggregate Benefit Service and projected reduced benefits. As in *Adams*, if Plaintiffs "clai[m] [they] received misrepresentations," those written materials "put [them] on notice that there had been previous misrepresentations." *Id.* As in *Adams*, therefore, the three-year limitations period must be measured from their receipt of those materials, meaning that their suit was filed too late under ERISA's statute of limitations.

## **CONCLUSION**

For the reasons above, this Court should grant summary judgment to Defendants.

Dated: December 10, 2015

| *s/ Evan Miller* | *s/ Ryan P. Hammond* |
|---|---|
| Evan Miller, *pro hac vice* | Ryan P. Hammond, WSBA #38888 |
| emiller@jonesday.com | rhammond@littler.com |
| Yaakov M. Roth, *pro hac vice* | Deidra A. Nguyen, WSBA #38034 |
| yroth@jonesday.com | danguyen@littler.com |
| Brett A. Swearingen, *pro hac vice* | LITTLER MENDELSON, P.C. |
| bswearingen@jonesday.com | 600 University Street, Suite 3200 |
| JONES DAY | Seattle, WA 98101.3122 |
| 51 Louisiana Avenue, N.W. | Phone: 206.623.3300 |
| Washington, D.C. 20001 | Fax: 206.447.6965 |
| Phone: 202.879.3939 | |
| Fax: 202.626.1700 | |

*Attorneys for Defendants*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

# CERTIFICATE OF SERVICE

I am a resident of the State of Washington, over the age of eighteen years, and not a party to the within action. My business address is One Union Square, 600 University Street, Ste. 3200, Seattle, WA 98101. I hereby certify that on December 10, 2015, I electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to The Honorable Ricardo S. Martinez and to the following:

| **Attorneys for Plaintiffs** | **Attorneys for Defendants** |
|---|---|
| Gretchen S. Obrist<br>gobrist@kellerrohrback.com<br>Erin M. Riley<br>eriley@kellerrohrback.com<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel: (206) 623-1900<br>Fax: (206) 623-3384<br>Attorneys for Plaintiff<br><br>David S. Preminger<br>dpreminger@kellerrohrback.com<br>1140 Avenue of the Americas, 9th Floor<br>New York, NY, 10036<br>Telephone: (646) 380-6690 | Evan Miller<br>emiller@jonesday.com<br>Jacob Roth<br>yroth@jonesday.com<br>Brett A. Swearingen<br>bswearingen@jonesday.com<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001 |

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

**Not Applicable**

I declare under penalty of perjury under the laws of the State of Washington that the above is true and correct. Executed on December 10, 2015 at Seattle, Washington.

/s/ *Leili Moore*
Leili Moore
Lemoore@littler.com

Firmwide:137525688.1 053838.1135

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19
Case No. 2:13-cv-01569-RSM

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300